**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIJAH WASHINGTON,** | : | **Civil No. 3:13-CV-2820** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **( Judge Kosik)** |
| | : | |
| **WARDEN, DAUPHIN COUNTY** | : | |
| **PRISON, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I.    Statement of Facts and of The Case

### A.    Procedural History

This is a *pro se* civil rights case filed by the plaintiff, Elijah Washington.

According to his complaint, Washington is presently housed in the State Correctional

Institution, Houtzdale, but was held in the Dauphin County Prison in March of 2012.

In his complaint Washington identifies the warden at the Dauphin County Prison, and

two John Doe correctional officers as defendants.  (Doc. 1)  While the warden is the

only defendant specifically identified in this complaint, there are no factual averments

made in the complaint about the warden beyond a general assertion that the warden

"is legally responsible for the overall operation of Dauphin County Prison."  (Id., ¶5.)

The complaint then alleges that in March of 2012, Washington was assigned to the top bunk of a cell at the prison. (Id.) According to Washington, after "gingerly" ascending to the top bunk, he "immediately became engrossed in a conundrum [w]here Plaintiff found Himself wondering how He would get down from the top-bunk." (Id., ¶10.) Acknowledging that he was "by no means a gymnast" Washington states that he jumped off of the top bunk, injuring his leg. (Id.) According to Washington, he called out for help but was initially denied assistance by two unnamed correctional officers. (Id.) Despite this initial denial of assistance, Washington admits that on the same day that this accident took place, he was transported to Harrisburg Hospital, x-rayed, and within a week was treated at the Polyclinic Hospital for an bone chip in his left knee. (Id.) One week later, Washington states he was transferred to state custody. (Id.)

On the basis of these averments, averments, which do not describe any actions taken by the prison warden, Washington sues the warden and the two unnamed officers, seeking $400,000 in damages. Moreover, despite the fact that by his own admission he has not been housed in the Dauphin County Prison for at least 20 months, Washington also seeks injunctive relief from these defendants.

Along with his complaint, Washington has filed a motion seeking leave to proceed *in forma pauperis*. (Doc. 2) We will grant the motion for leave to proceed

*in forma pauperis*, but as part of our legally-mandated screening review we find that Washington has failed to state a claim upon which relief may be granted. Therefore, we recommend that the Court dismiss the claims lodged against these defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

## II.    Discussion

### A.    Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations

which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police,

CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).

**B.** **Washington's Complaint Fails to State Any Claims of Supervisory Liability**

At the outset, in this case Washington has named the prison warden as a defendant in his complaint but has not alleged sufficient facts to give rise to supervisory liability against this official. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of

personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, Washington does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Washington simply premises the liability of this defendant upon his supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Washington sustain a supervisory liability claim against this official by simply alleging in a talismanic fashion that he failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Washington cannot rely upon either of these theories of supervisory liability to support his current complaint. First, Washington has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in

[their] subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).  Moreover, there is no claim of supervisory liability here grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).

In sum, as presently drafted, the plaintiff's claims against the supervisory defendant consists of little more than assertions of *respondeat superior* liability assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, the warden is entitled to be dismissed from this case.

### C. <u>Washington's Complaint Does Not State a Valid Eighth Amendment Claim</u>

Further, Washington's complaint, which recites that he received medical care on the day he was injured, and was then treated at two different hospitals in the days immediately following this incident, simply does not state a constitutional claim.  The gravamen of this complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs.  Washington faces an exacting burden in advancing this Eighth

Amendment claim against prison officials in their individual capacities. To sustain

such a claim, Washington must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims

premised upon inadequate medical care. In the medical context, a constitutional

violation under the Eighth Amendment occurs only when state officials are

deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429

U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate

medical care in a prison setting, Washington is required to point to evidence that

demonstrates both (1) a serious medical need, and (2) acts or omissions by prison

officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d

192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary

and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be

evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician

exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support

a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of care to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247

F.App'x 390 (3d Cir. 2007)(same). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Judged against these standards, Washington's complaint, which alleges that he received prompt, and appropriate, medical care immediately after this accident, simply does not describe the level of deliberate indifference which is necessary to a constitutional tort claim. Therefore, this allegation, as presently drafted in this complaint, also fails on its merits.

### D. Washington's Release from Custody Renders Moot Prisoner's Request For Injunctive Relief from Prison Officials at this Facility

We further find that the plaintiff's release from custody renders moot his current motion for injunctive relief from the defendants, corrections officials at this county prison who formerly oversaw the conditions of the plaintiff's imprisonment at that particular facility.

The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's

personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). In this case, Washington sought to enjoin prison officials to provide him with a specific forms of medical care while he was in prison, yet it is entirely undisputed that Washington is no longer in the defendants' custody and, therefore, no longer receives these services from the prison defendants named in this case.

This simple fact raises a threshold, and insurmountable, obstacle to this motion for injunctive relief relating to conditions at a prison where he is no longer incarcerated. Upon consideration, we conclude that the plaintiff's release from the prison renders his motion for injunctive relief moot, and that motion should be denied. In this setting, the United States Court of Appeals for the Third Circuit has observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul-Akbar, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003). See Griffin v. Beard, No. 09-4404, 2010 WL 4642961 (3d Cir. Nov. 17, 2010)(transfer from SCI Huntingdon renders inmate injunctive relief claim moot). Indeed, as this Court has previously observed, in a case such as this, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his [rights] is academic. See Muslim v. Frame, 854 F.Supp. 1215, 1222 (E.D.Pa.1994). In other words, [the prisoner-plaintiff's] transfer to another institution moots any claims for injunctive or declaratory relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3rd Cir.1993); Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir.1981).
>
> Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998).

These principles control here, and compel denial of this motion for injunctive relief as moot since the prisoner-plaintiff is no longer housed at this prison.

### E. The Plaintiff's Demand for a Specified Sum of Damages Should be Stricken

Further, we note that the Court should also strike the various claims for specific sums of unliquidated damages from this *pro se* complaint. In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions

regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. <u>Singh v. Superintending School Committee of the City of Portland</u>, 593 F. Supp. 1315 (D. Me. 1984). In this case, the plaintiffs' various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

### F.   The Complaint Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against these supervisory defendants upon which relief may be granted. While this screening

merits analysis calls for dismissal of this action, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint with respect to the supervisory defendants at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.  Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED (Doc. 2), but IT IS RECOMMENDED that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of November, 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge